NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260420-U

NOS. 4-26-0420, 4-26-0421 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| In re K.D. and K.L., Minors, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|       Petitioner-Appellee, | ) | Nos. 24JA134 |
|       v. | ) |      25JA108 |
| Rebecca D., | ) | |
|       Respondent-Appellant). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the trial court's termination of respondent-mother's parental rights where the trial court did not abuse its discretion in denying respondent-mother's oral request for a continuance on the day of trial.

¶ 2    Respondent, Rebecca D., is the mother of K.D. and K.L. The State filed motions to terminate her parental rights as to both children. On the day set for trial, respondent orally requested a continuance, which the trial court denied. Following the unfitness and best-interests hearings, the court terminated respondent's parental rights. Respondent appeals, arguing that the court abused its discretion in denying her request for a continuance. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    On August 21, 2024, the State filed a petition alleging that K.D. was a neglected minor where respondent failed to abide by the safety plan in place (705 ILCS 405/2-3(1)(a) (West

2024)) and his environment was injurious to his welfare (705 ILCS 405/2-3(1)(b) (West 2024)), as evidenced by (1) domestic violence between his parents, (2) respondent's drug use, (3) respondent's mental health issues, and (4) drug use by K.D.'s father, Ronald L. While both parents were named in the petition, this appeal involves only respondent. Ronald filed a separate appeal.

¶ 5        A shelter care hearing was held the same day. As a result of that hearing, the trial court placed K.D. in shelter care and granted temporary custody and guardianship to the guardianship administrator of the Illinois Department of Children and Family Services (DCFS), with authority to place the minor.

¶ 6        According to the DCFS service plan dated September 1, 2024, and filed with the court on October 18, 2024, respondent was to participate in the following services: "Mental Health, Substance Abuse, Random toxicology screenings, domestic violence, housing, income, parenting education/parent coaching, and cooperation."

¶ 7        The trial court entered an adjudicatory order on January 22, 2025, finding K.D. neglected based on the allegations of the petition, including respondent's failure to abide by the safety plan, her drug use, her mental health, and her domestic violence with Ronald. The court subsequently entered a dispositional order on February 19, 2025, making K.D. a ward of the court. The court admonished respondent to cooperate with DCFS and comply with the terms of the service plan.

¶ 8        At a hearing on July 9, 2025, respondent notified the trial court that she was pregnant and that Ronald was the father. On July 16, 2025, the State filed a petition alleging that respondent's newborn son, K.L., was neglected because, at birth, his blood, urine, or meconium contained methamphetamine (705 ILCS 405/2-3(1)(c) (West 2024)) and his environment was

injurious to his welfare (705 ILCS 405/2-3(1)(b) (West 2024)) as a result of (1) respondent's drug use, (2) domestic violence between respondent and Ronald, (3) Ronald's drug use, and (4) K.L.'s four siblings being adjudicated neglected and taken from respondent's care.

¶ 9 A shelter care hearing was held the same day, and respondent stipulated that the removal of K.L. from her care was necessary. The trial court placed K.L. in shelter care and granted temporary custody and guardianship to the guardianship administrator of DCFS. The court admonished respondent to cooperate with DCFS and comply with the terms of the service plan.

¶ 10 The trial court entered an adjudicatory order on September 10, 2025, finding K.L. neglected because K.D. remained in the care of DCFS and respondent had not made progress toward K.D. returning to her care.

¶ 11 A. Termination of Parental Rights Motions

¶ 12 On October 28, 2025, the State filed a motion for termination of parental rights regarding K.D., alleging that respondent was unfit because she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to K.D.'s welfare (750 ILCS 50/1(D)(b) (West 2024)); (2) abandoned K.D. (750 ILCS 50/1(D)(a) (West 2024)); (3) deserted K.D. for more than three months preceding the commencement of the action (750 ILCS 50/1(D)(c) (West 2024)); (4) failed to make reasonable efforts to correct the conditions which were the basis for the removal of K.D. within nine months following an adjudication of neglect, specifically, January 22, 2025, through October 22, 2025 (750 ILCS 50/1(D)(m)(i) (West 2024)); and (5) failed to make reasonable progress toward the return of K.D. to her within nine months of the adjudication of neglect, specifically, January 22, 2025, through October 22, 2025 (750 ILCS 50/1(D)(m)(ii) (West 2024)).

¶ 13 On October 29, 2025, the State filed a motion for termination of parental rights

regarding K.L., alleging that respondent (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to his welfare (750 ILCS 50/1(D)(b) (West 2024)); (2) abandoned him (750 ILCS 50/1(D)(a) (West 2024)); (3) deserted him for more than three months preceding the commencement of the action (750 ILCS 50/1(D)(c) (West 2024)); and (4) failed to demonstrate a reasonable degree of interest, concern, or responsibility as to his welfare during the first 30 days after his birth (750 ILCS 50/1(D)(l) (West 2024)). On the same day, the trial court entered a dispositional order, making K.L. a ward of the court.

¶ 14 At the first appearance on October 29, 2025, respondent did not appear. The matter was set for a pretrial hearing on January 21, 2026. On January 21, 2026, respondent was present in the trial court, and the court announced the case was set for trial on April 2, 2026.

¶ 15                                    B. Unfitness Hearing

¶ 16 On April 2, 2026, respondent appeared at the trial on the motions for the termination of her parental rights. Respondent's counsel asked for a continuance, indicating that respondent thought the matter was up for pretrial and she "did not bring any witnesses nor any evidence, written documents today." Ronald joined in the motion. The State objected, noting that respondent had several months to prepare for the trial. The trial court began by stating that the "[p]arties have a history of not showing for court." The court then stated:

> "[Respondent] has a little better history of showing up, but not much. She's had every opportunity *** to get with [her counsel], to plan for this, and if she's chosen not to do that, then I think that's on her. We set this out for, we had first appearance, and we set it for a pretrial, they chose not to be here for pretrial. We've now set it for trial. So they've had plenty of time to determine what they wanted to do in this case, how they wanted to proceed, how they wanted to prepare, how they

- 4 -

wanted [counsel] to be able to prepare, and they have chosen not to do that.

Based upon that, motions to continue are denied."

¶ 17 The only witness to testify during the unfitness hearing was Cassandra Winters, the caseworker for K.D. and K.L. She took over as K.D.'s caseworker in March 2025 and had been K.L.'s caseworker since he came into care shortly after his birth in July 2025. Winters testified that the case originally came into care because methamphetamine was discovered in K.D.'s bottle and respondent told police that Ronald put it there. When Winters took over the case, respondent was to complete a list of services, including obtaining housing and income, participating in domestic violence services, completing parent education/parent coaching classes, obtaining mental health treatment, cooperating with DCFS, and completing substance abuse services, which included drug screenings.

¶ 18 When Winters took over K.D.'s case, respondent had not completed or made progress on any services. At that time, respondent "was doing visits sporadically." Soon thereafter, respondent's "visits were suspended because of too many no-shows." Prior to Winters taking over the case, respondent failed to appear for most of her drug drops, and those that she did appear for were positive for "meth." Winters asked respondent to complete approximately 40 drug drops, and she completed none.

¶ 19 Winters testified that K.L. came into care immediately after birth because he tested positive for methamphetamine and amphetamine and had a sibling "still in care." Respondent had no visits with K.L. since his birth, despite being "offered visits multiple times." Respondent identified Ronald as K.L.'s father immediately after his birth. She never identified any other potential fathers, and no other potential fathers came forward.

¶ 20 The last time respondent saw K.D. was in September 2025, at an unapproved visit.

Respondent's last approved visit with K.D. was in March 2025. According to Winters, respondent has not completed a single service during "the entirety of the case." Winters testified that neither parent has cooperated with DCFS. She testified that she was never close to returning the children to either parent.

¶ 21 The State rested and neither parent testified nor presented any witnesses. The trial court ruled that the State had shown by clear and convincing evidence that respondent had failed to demonstrate a reasonable degree of interest, concern, or responsibility as to K.D.'s welfare. The court further found "by [her] lack of involvement that [she has] abandoned the minor and deserted the minor, and that [she] failed to make reasonable efforts and reasonable progress during the time frames of January of '25 through October of '25." Thus, the court found respondent unfit as to K.D.

¶ 22 As to K.L., the trial court found that respondent never visited K.L., engaged in services, or contacted the caseworker. The court found that "for the entirety of [K.L.]'s life, [respondent] has failed to maintain any degree of interest, concern, or responsibility." The court further found that respondent "clearly abandoned" K.L., "clearly deserted" K.L., and "she obviously in that time during the first 30 days after the child's birth showed no reasonable degree of interest, concern, or responsibility, and that lack of interest, concern, or responsibility has stretched through this *** child's [entire] life."

¶ 23 The trial court then asked the parties if they were prepared to proceed to the best-interests hearing. Although the State was ready, respondent objected to proceeding to a best-interests hearing and sought another continuance. The court denied the request for a continuance.

¶ 24 C. Best-Interests Hearing

¶ 25 Winters testified that K.D. was currently placed with his maternal grandmother and

her husband and had been with them since the case opened in August 2024. Winters reported that K.D. was "doing great in his placement." She said, "He loves his grandparents very much." Winters testified that the placement met all of K.D.'s needs and was an adoptive placement. K.D. was attached to both his grandparents and called them "grandma" and "grandpa." At the time of the hearing, K.D. was 22 months old.

¶ 26    K.L. was placed in a traditional foster placement and not with his grandparents because they felt they could not properly care for both him and K.D. K.L. was eight months old at the time of the hearing and had been in the same placement since he came into care shortly after his birth. Winters reported that K.L. was "doing great" in his placement. All his needs were being met. The foster parents had expressed a willingness to adopt K.L. He was happy and enjoyed when other children were around. He was one of six children in the foster home. K.L. and K.D. saw each other at least twice a month, and the foster parents planned to continue those visits. Winters testified that it was in K.D.'s and K.L.'s best interests for respondent's parental rights to be terminated because the children deserved "stability."

¶ 27    The trial court listed the factors to be considered in making a best-interests determination. The court acknowledged that K.L. had spent his entire life in the care of foster parents and K.D. had spent most of his life with his grandparents. The court found that the children appeared to be "very secure" and "feel very loved," and they were "happy" in their arrangements. The court further found that the children had an attachment to their foster families, "who are providing their care every single day of their lives." The court noted that both families were willing to adopt the children and were willing to provide the permanence that these children needed and deserved.

¶ 28    The trial court found that the State had shown by "more than a preponderance of

the evidence" that it was in the best interests of the minors that the parental rights of both parents be terminated. The court explained:

> "These children need permanence. They deserve that. I do not believe that giving parents more time will make any difference in this case. They have had plenty of time to show that they are even going to show an interest in their children, let alone engage in services, but just to show that they were going to show an interest. They have not done that, and I do not find that giving them any additional time would be of any benefit to anyone."

Thus, the court terminated respondent's parental rights and named DCFS as guardian and custodian, with the power to consent to adoption.

¶ 29    This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31    Respondent argues that the trial court abused its discretion in failing to grant her a continuance on the day set for trial on the motions to terminate parental rights.

¶ 32    Illinois Supreme Court Rule 901(c) (eff. Oct. 1, 2021) applies to this case because it was brought pursuant to article II of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/art. 2 (West 2024)). See Ill. S. Ct. R. 900(b)(2) (eff. Mar. 8, 2016). Rule 901(c) provides:

> "Parties, witnesses and counsel shall be held accountable for attending hearings in child custody and allocation of parental responsibilities proceedings. Continuances shall not be granted in child custody and allocation of parental responsibilities proceedings except for good cause shown and may be granted if the continuance is consistent with the health, safety and best interests of the child. The party requesting the continuance and the reasons for the continuance shall be documented in the

record." Ill. S. Ct. R. 901(c) (eff. Oct. 1, 2021).

"Rule 901 includes procedures that are designed and proven to expedite child custody and allocation of parental responsibilities proceedings." Ill. S. Ct. R. 901, Committee Comments (rev. Mar. 8, 2016). Paragraph (c) is intended to "help to significantly reduce delays in child custody and allocation of parental responsibilities proceedings." Ill. S. Ct. R. 901, Committee Comments (rev. Mar. 8, 2016).

¶ 33 "[A] party has no absolute right to a continuance." *In re Tashika F.*, 333 Ill. App. 3d 165, 169 (2002). "Under most circumstances, requests for continuances on the day of trial need not be allowed." *In re D.M.*, 2020 IL App (1st) 200103, ¶ 25; see *Sinram v. Nolan*, 227 Ill. App. 3d 241, 243 (1992) ("Our legal system cannot work efficiently if continuances are readily available on the day of trial."). "If a continuance is not requested until the date of the trial, the moving party must give especially persuasive reasons for continuance because of the potential inconvenience to the witnesses, the parties, and the court." *Sinram*, 227 Ill. App. 3d at 243.

¶ 34 A trial court's decision to deny a motion to continue will not be reversed absent an abuse of discretion. *Tashika F.*, 333 Ill. App. 3d at 169. "A trial judge abuses his discretion when he makes a ruling that is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *D.M.*, 2020 IL App (1st) 200103, ¶ 20. Denial of a request for a continuance will not be grounds for reversal unless the complaining party has been prejudiced by such a denial. *Tashika F.*, 333 Ill. App. 3d at 169.

¶ 35 Here, the record indicates that although respondent was not always present at trial court hearings, she was present on January 21, 2026, when the April 2, 2026, trial date was set and announced, so she was aware that trial would occur on April 2, 2026. Nevertheless, respondent requested a continuance on the day set for trial, stating that she did not know the trial was to take

place that day and was not prepared to present witnesses and evidence. Her reason did not demonstrate good cause because she should have known that trial was to take place that day and should have been prepared. She had been told at the pretrial proceeding over two months earlier of the date set for trial. Additionally, the motions to terminate respondent's parental rights were filed on October 28, 2025, and October 29, 2025, giving respondent over five months to get her witnesses and evidence in order. Respondent indicated that she needed a continuance because she had no witnesses or documents with her. However, she never identified any witnesses or documents she would have introduced if she were to receive a continuance. Respondent failed to satisfy Rule 901 by showing that she had "good cause" for a continuance. Thus, the trial court did not abuse its discretion in denying her request for a continuance.

¶ 36     Respondent cites two cases in which trial courts have been found to have abused their discretion in denying continuances, *In re Jill R.*, 336 Ill. App. 3d 956 (2003), and *Vollentine v. Christoff*, 24 Ill. App. 3d 92 (1974). However, those cases are readily distinguishable. First, neither case involves a termination of parental rights trial, where matters are to be expedited. See Ill. S. Ct. R. 901, Committee Comments (rev. Mar. 8, 2016). Additionally, the facts of the two cases are dramatically different than this case.

¶ 37     In *Jill R.*, the respondent was admitted to a hospital. *Jill R.*, 336 Ill. App. 3d at 959. The next day, the respondent's brother filed a petition for emergency involuntary admission of the respondent to a mental health facility. *Jill R.*, 336 Ill. App. 3d at 959. The trial court set a hearing on the involuntary admission petition for two days later. *Jill R.*, 336 Ill. App. 3d at 959. At the outset of the hearing, the respondent's counsel made an oral motion for a two-day continuance to file a motion to dismiss and obtain supporting affidavits. *Jill R.*, 336 Ill. App. 3d at 959. The court denied the motion for a continuance. *Jill R.*, 336 Ill. App. 3d at 959. The reviewing court concluded

- 10 -

that the denial was an abuse of discretion because "the trial court limited [the] respondent's ability to fully present her claim by denying her counsel's request for a two-day continuance to prepare and obtain affidavits." *Jill R.*, 336 Ill. App. 3d at 963.

¶ 38     Unlike the respondent in *Jill R.*, who had two days to respond to the petition for her emergency involuntary admission, respondent in this case had over two months from the prior pretrial hearing and over five months from the time the State filed the motions to terminate her parental rights until the trial on those motions. Thus, respondent had plenty of time to prepare and present her defense, and no continuance was necessary. Additionally, a continuance would not be in the best interests of K.D. and K.L., who had been in care for 18 and 8 months, respectively, because it would unnecessarily prolong the proceedings, which is not favored in these types of cases. See Ill. S. Ct. R. 901, Committee Comments (rev. Mar. 8, 2016).

¶ 39     Respondent also cites *Vollentine*. In that case, trial was originally set for June 8 but was delayed until June 11, at the request of the defendant. *Vollentine*, 24 Ill. App. 3d at 96. On June 11, when the plaintiff asked for a continuance until June 18 so that his expert could be present for trial, the trial court denied the request. *Vollentine*, 24 Ill. App. 3d at 96. The appellate court reversed the trial court's denial of the continuance, finding that it was an abuse of discretion because the expert's testimony was "indispensable" and "essential" to the plaintiff's case. *Vollentine*, 24 Ill. App 3d at 96.

¶ 40     *Vollentine* is clearly distinguishable from this case. Respondent never alleged that she had an expert who was "indispensable" to her case who could not attend trial on April 2, 2025. In fact, respondent never informed the trial court what witnesses or evidence she intended to present if the case were to be continued. Respondent contends that it was the court's duty to inquire into her potential witnesses and documentation before ruling on the motion to continue. However,

that is not the law. It was respondent's duty to explain what witnesses and documents she could not present that would prejudice her ability to present a defense. See *Tashika F.*, 333 Ill. App. 3d at 169. In the absence of a showing from respondent that "essential" and "indispensable" evidence could not be presented without a continuance, the court did not abuse its discretion in denying respondent's request for a continuance. Unlike the plaintiff in *Vollentine*, who could not control the availability of an expert witness, respondent could control her appearance at trial and the preparation of her case. Based on the goal of expediting child custody cases and the undesirability of continuances in such cases, the court's decision to deny the continuance in this case was appropriate.

¶ 41 This case is much more like *D.M.* In *D.M.*, a parent failed to appear at a termination of parental rights trial. *D.M.*, 2020 IL App (1st) 200103, ¶ 14. The parent's attorney, who was new to the case, made an oral motion requesting a continuance of the trial because "she was not prepared to go forward with the trial." *D.M.*, 2020 IL App (1st) 200103, ¶ 14.

> "Noting the importance of resolving cases involving the legal parentage of abused and neglected children in a timely fashion and the fact that a brand new attorney showed up and made an oral motion for a continuance on the day of trial, the trial court denied the motion for a continuance." *D.M.*, 2020 IL App (1st) 200103, ¶ 14.

The appellate court found the trial court did not abuse its discretion in denying the request for a continuance. *D.M.*, 2020 IL App (1st) 200103, ¶ 36. In reaching its decision, the appellate court stated:

> "As the trial court in this case recognized, the Juvenile Court Act prioritizes the prompt disposition of cases concerning abuse and neglect of minors. 705 ILCS 405/2-14 (West 2016). In fact, the General Assembly has observed that the delay

in promptly adjudicating cases concerning child abuse and neglect cases 'can cause grave harm to the minor.' *Id.* § 2-14(a). Thus, the Juvenile Court Act requires Illinois courts to 'act in a just and speedy manner to determine the best interests of the minor.' *Id.* A requirement that a continuance be granted on the day of trial without any justifiable cause for the delay would run counter to the General Assembly's expressly stated legislative policy." *D.M.*, 2020 IL App (1st) 200103, ¶ 36.

¶ 42 Like *D.M.*, this case involves an oral request for a continuance on the day of trial in a termination of parental rights case. As the trial court found in *D.M.*, it was not an abuse of discretion to deny the request because it was made on the day of trial and without good cause. As both the trial and appellate courts noted in *D.M.*, the rights of abused and neglected children are of paramount importance, and courts should act expeditiously in determining whether a parent's rights should be terminated. The court in this case, like the court in *D.M.*, did not abuse its discretion in denying respondent's oral request for a continuance on the day set for trial.

¶ 43                                    III. CONCLUSION

¶ 44           For the reasons stated, we affirm the trial court's judgment.

¶ 45           Affirmed.